FILED

MAR 2 7 2009

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,
STATE OF CALIFORNIA, STATE OF
HAWAII, and STATE OF NEVADA
EX REL. [~~~~~~~~~~],

        Plaintiffs,

        v.

[~~~~~~~~~~],

        Defendants.

CV 09 1372

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

~~FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)~~

JL

FILED

MAR 2 6 2009

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA



UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,
STATE OF CALIFORNIA, STATE OF
HAWAII, and STATE OF NEVADA
EX REL.  [UNDER SEAL],

                    Plaintiffs,

          v.

                    Defendants.

CV 09 1372

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

~~FILED UNDER SEAL~~ **PURSUANT**
**31 U.S.C. § 3730(b)(2)**

1  Michael A. Hirst, Esq. CA Bar #131034
   Michael.Hirst@hirst-chanler.com
2  Leslie S. Guillon, Esq. CA Bar #222400
   Leslie.Guillon@hirst-chanler.com
3  HIRST & CHANLER LLP
   455 Capitol Mall, Suite 605
4  Sacramento, CA 95814
   Tel: (916) 443-6100
5  Fax: (916) 443-6700

6
   Mark A. Kleiman, Esq. CA Bar #115919
7  MarkKleiman@earthlink.com
   LAW OFFICES OF MARK ALLEN KLEIMAN
8  2907 Stanford Avenue
   Venice, CA 90292
9  Tel: (310) 306-8094
   Fax: (310) 306-8491
10

11 Attorneys for Qui Tam Plaintiff

12

13                  UNITED STATES DISTRICT COURT

14          FOR THE NORTHERN DISTRICT OF CALIFORNIA

15

16
   UNITED STATES OF AMERICA, STATE OF  )
17 CALIFORNIA, STATE OF HAWAII, and    )
   STATE OF NEVADA ex rel. HAROON AZIZ, )
18                                      )
              Plaintiffs,              )  **COMPLAINT**
19                                      )
                v.                     )  **DEMAND FOR JURY TRIAL**
20                                      )
   CVS CAREMARK CORPORATION, LONGS DRUG )  **FILED UNDER SEAL PURSUANT**
21 STORES CORPORATION, and DOES 1 - 10, )  **TO 31 U.S.C. § 3730(b)(2)**
                                        )
22              Defendants.             )
   _____)
23

24

25

26

27

28

1        Plaintiff Haroon Aziz, through his attorneys Hirst & Chanler

2 LLP and the Law Offices of Mark Allen Kleiman, on behalf of the

3 United States and the States of California, Colorado, Hawaii,

4 Nevada, Oregon, and Washington, and based upon personal

5 knowledge, relevant documents, and information and belief,

6 alleges as follows:

7 **I.   NATURE OF THIS ACTION**

8        1.   Since at least 2000 to the present, Defendants CVS

9 Caremark Corporation and Longs Drug Stores Corporation (hereafter

10 "Longs" or "Defendant") has knowingly submitted false and

11 fraudulent claims to the United States and the States of

12 California, Colorado, Hawaii, Nevada, Oregon, and Washington.

13       2.   Defendant Longs' fraudulent and illegal conduct includes

14 falsely billing the state Medicaid programs for: (1) amounts that

15 were also reimbursed by insurance companies for those patients

16 having other health insurance coverage; and (2) over-the-counter

17 drugs by intentionally misreporting the actual manufacturer of

18 the drugs.

19       3.   Defendant's knowing submission and causing of submission

20 of false and fraudulent claims for payment constitutes a

21 violation of the federal False Claims Act, 31 U.S.C. §§ 3729 et

22 seq. ("FCA"), the California False Claims Act, Government Code §§

23 12650 et seq. ("California FCA"), the Hawaii False Claims Act,

24 Hawaii Revised Statutes §§ 661 - 21 et seq. ("Hawaii FCA"), and

25 the Nevada False Claims Act, Nevada Revised Statutes §§ 357.010

26 et seq. ("Nevada FCA") (hereafter collectively "state FCAs").

27       4.   As a result of its fraudulent conduct, Defendant Longs

28 has caused the United States, California, Colorado, Hawaii,

Complaint                           2

1 Nevada, Oregon and Washington to sustain a direct loss of funds
2 and damage to their interests.

3    5.    The FCA was originally enacted during the Civil War at
4 the request of President Lincoln, who believed that the
5 government was being defrauded by unscrupulous contractors.  The
6 Act was substantially amended by Congress in 1986 to enhance the
7 government's ability to recover losses sustained as a result of
8 defendants' fraud.  At that time, Congress determined that fraud
9 against the government was pervasive and that the FCA, which
10 Congress described as the primary tool for combating government
11 fraud, was in need of reform.  Congress intended that the 1986
12 amendments create incentives for individuals with knowledge of
13 fraud against the United States to disclose the information
14 without fear of reprisals or government inaction, and to
15 encourage the private bar to commit legal resources to prosecute
16 fraud on the government's behalf.

17    6.    The FCA prohibits knowingly presenting, or causing to be
18 presented, to the federal government a false or fraudulent claim
19 for payment or approval.  31 U.S.C. §§ 3729(a)(1).  Additionally,
20 it prohibits knowingly making or using, or causing to be made or
21 used, a false or fraudulent record or statement to get a false or
22 fraudulent claim paid or approved by the federal government.  31
23 U.S.C. § 3729(a)(2).  Any person who violates the FCA is liable
24 for a civil penalty of up to $11,000 for each violation, plus
25 three times the loss sustained by the United States.  31 U.S.C. §
26 3729(a); 64 Fed. Reg. 47099, 47103 (1999).

27    7.    The California FCA, Hawaii FCA, and Nevada FCA also
28 prohibit knowingly presenting, or causing to be presented, to the

Complaint                                    3

1  state a false or fraudulent claim for payment or approval, and
2  conspiring to defraud the state by getting a false or fraudulent
3  claim allowed or paid. The civil penalty is up to $10,000 for
4  each violation, plus three times the loss sustained by the state.
5  California Government Code § 12651, Hawaii Revised Statutes §
6  661-21 (a), Nevada Revised Statutes § 357.040-1.

7      8.    The federal and state FCAs define "knowing" as having
8  knowledge that the information is false, or acting with a
9  deliberate ignorance of, or reckless disregard of, the truth or
10 falsity of the information. 31 U.S.C. § 3729(b); California
11 Government Code § 12650(b)(2); Hawaii Revised Statutes § 661-
12 21(e); Nevada Revised Statutes § 357.040-2.

13     9.    The statutes allow any person having information about a
14 FCA violation to bring an action on behalf of the United States,
15 the State of California, the State of Hawaii, and the State of
16 Nevada (separately and collectively "government"), and to share
17 in any recovery obtained. The Act requires that the complaint be
18 filed under seal for a minimum of 60 days (without service on the
19 Defendant during that time) to allow the government time to
20 conduct its own investigation and to determine whether to join
21 the suit.

22     10.   Based on the federal and state FCAs, qui tam plaintiff
23 Haroon Aziz ("Relator" or "Aziz") seeks to recover all available
24 damages, civil penalties, and other relief for the federal and
25 state violations alleged herein, in every jurisdiction to which
26 the Defendant's misconduct has extended.

27     11.   Relator also alleges retaliation in violation of the
28 federal False Claims Act, 31 U.S.C. § 3730(h), California False

Complaint                                4

1 Claims Act, Cal. Govt. Code § 12653, and wrongful termination in
2 violation of public policy and California Labor Code § 1102.5.

3 **II. PARTIES**

4    12.   Relator Haroon Aziz was a pharmacy technician for Longs
5 from September 2000 to March 2008. He worked at several store
6 locations, including store #42 in Walnut Creek, California. He
7 was terminated by Longs after inquiring, gathering evidence, and
8 questioning the central billing office staff and his managers
9 about Longs' Medicaid billing practices.

10   13.   Defendant CVS Caremark Corporation ("CVS") is the
11 largest provider of prescriptions and related health care
12 services in the United States. On or around October 20, 2008,
13 CVS acquired Longs Drug Stores Corporation. CVS' headquarters
14 are located at One CVS Drive, Woonsocket, Rhode Island.

15   14.   Defendant Longs Drug Stores Corporation is a retail
16 drug store chain with approximately 500 stores in California,
17 Hawaii, and Nevada. From 2000 to 2007, Longs also had from 23 to
18 28 stores in Colorado, Oregon, and Washington. Its headquarters
19 are located at 141 North Civic Drive, Walnut Creek, California.
20 Longs' stock is traded on the New York Stock Exchange.

21   15.   The identities of the remaining Doe Defendants who have
22 knowingly submitted false and fraudulent claims, and false
23 statements in support of claims, to the United States and the
24 States of California, Colorado, Hawaii, Nevada, Oregon, and
25 Washington are presently unknown to Relator. The listed
26 Defendant and such additional Doe Defendants served as
27 contractors, agents, partners, and/or representatives of one and
28 another in the fraud and submission of false and fraudulent

Complaint                              5

1  claims, and false statements in support of claims, and were
2  acting within the course, scope and authority of such contract,
3  agency, partnership and/or representation for the conduct
4  described herein.

5  **III. JURISDICTION AND VENUE**

6      16.  This Court has jurisdiction over the subject matter of
7  this action pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732,
8  the latter of which specifically confers jurisdiction on this
9  Court for actions brought pursuant to 31 U.S.C. §§ 3729 and 3730.

10     17.  Under 31 U.S.C. § 3730(e) and the state FCAs, there has
11 been no public disclosure of the "allegations or transactions" in
12 this Complaint.  To the extent there has been any such
13 disclosure, Relator Aziz is an "original source" pursuant to 31
14 U.S.C. § 3730(e)(4) and the state statutes.

15     18.  Personal jurisdiction and venue are proper in this
16 district pursuant to 28 U.S.C. §§ 1391(b) and 1395(a), and 31
17 U.S.C. § 3732(a), as one or more of the Defendants or their
18 agents can be found, reside, transact business, or otherwise
19 engaged in fraudulent conduct within the district.

20 **IV.  BACKGROUND**

21     19.  The Medicaid Program ("Medicaid") was created in 1965,
22 when Title XIX was added to the Social Security Act.  Medicaid is
23 a public assistance program providing payment of medical expenses
24 for low-income patients.  Funding for Medicaid is shared between
25 the federal government and state governments that participate in
26 the program.  The States of California, Colorado, Hawaii, Nevada,
27 Oregon, and Washington are participating Medicaid states.    In
28 California, the Medicaid program is known as "Medi-Cal."

Complaint                          6

1    20.  Non-legend pharmaceuticals, also known as "over-the-
2  counter" drugs, are those for which a prescription is not
3  required by applicable federal and/or state laws in order to
4  dispense to patients.  The Medicaid program covers some of the
5  non-legend pharmaceuticals, but only when prescribed by a
6  licensed physician or other health care provider acting within
7  the scope of their practice.

8  **V.  ALLEGATIONS**

9    21.  Relator incorporates by reference and realleges as
10  though fully set forth herein paragraphs 1 - 20.

11

12  **A.  Falsely Billing Drugs for Patients Having Other Health Coverage**

13    22.  Since at least February 2005, Defendant Longs has
14  knowingly and fraudulently billed Medicaid excessive amounts for
15  prescription pharmaceuticals dispensed to patients with other
16  health insurance.  Longs improperly bills Medicaid for the full
17  price of the drugs rather than limiting its billing to only the
18  patients' copayment, coinsurance, and/or deductible amounts not
19  reimbursed by the other health insurance policies.

20    23.  State Medicaid programs generally require that
21  pharmacies bill the patients' other health insurance providers,
22  if any, first and then bill Medicaid for any unpaid balance.  For
23  example, California's Medi-Cal requirement is listed in the
24  Pharmacy Provider Manual, Part 1, "Other Health Coverage (OHC)
25  Guidelines for Billing":

26      "In most situations providers are required by law to
         exhaust the recipient's OHC before billing Medi-Cal.
27      In those situations where OHC utilization is not
         required before billing Medi-Cal, providers are still
28      encouraged to bill OHC first (OHC plans often pay more

Complaint                    7

1
2
3
4

than Medi-Cal)....The OHC carrier may reimburse at a higher rate than Medi-Cal. If a provider receives a partial payment from the OHC carrier, Medi-Cal may be billed for the balance. Medi-Cal reimbursement is the difference between the Medi-Cal allowable amount and the OHC carrier payment."

24. An example of how Longs falsely bills drugs for patients with other health insurance coverage is shown by Medi-Cal beneficiary Karen M., who had pharmacy coverage provided by Health Net and secondary coverage provided by Medi-Cal. Longs dispensed a Fentanyl patch to this beneficiary on September 4, 2007. Longs billed Health Net and was paid $295.61 plus a dispensing fee of $2.35. The beneficiary had a co-pay with Health Net of $15.00. Instead of billing only the co-pay amount to Medi-Cal, Longs knowingly and falsely billed Medi-Cal for more than just the co-pay and received $154.98. A copy of Longs' "Adjudication Response" for this prescription is attached hereto as Exhibit A.

25. In another example, Longs dispensed 120 capsules of Itraconazole to Karen M. on April 10, 2006. Health Net paid Longs for this drug except for the co-pay amount at that time, $10.00. Again, rather than billing Medi-Cal for only the $10.00 co-pay, Longs fraudulently billed for the full amount of the drug. As such, by falsely billing Medi-Cal, Longs received $160.00 from the state, in addition to the drug payment from Health Net.

**B. Falsely Billing Medicaid for Over-the-Counter Drugs**

26. Since at least 2000, Defendant Longs has knowingly and fraudulently billed Medicaid in the States of California, Colorado, Hawaii, Nevada, Oregon, and Washington by falsely

Complaint                                  8

reporting the manufacturer of the over-the-counter drugs that it disperses. By doing so, Longs has received excessive reimbursement from Medicaid.

27. Medicaid prescription reimbursement to pharmacies in California, Colorado, Hawaii, Nevada, Oregon, and Washington is generally limited to the lowest of several amounts, two of which are: (1) the pharmacy's usual and customary charge to the general public, and (2) an amount based upon the Average Wholesale Price ("AWP") as reported by the manufacturer.

28. For example, Medicaid reimbursement under California's Medi-Cal program is the lowest of one of the following amounts:

> "1. Maximum Allowable Ingredient Cost plus current professional fees
> 2. Federal Upper Limit plus current professional fees
> 3. Estimated Acquisition Cost ("EAC") plus current professional fees
> 4. Charge to the general public"

Pharmacy Provider Manual, Part 2, "Reimbursement," page 1. The EAC is defined as AWP minus 17%. Id., page 3. The current professional fee, as of October 2008, is $2.00.

29. The Colorado, Hawaii, Nevada, Oregon, and Washington Medicaid programs define EAC as the AWP minus 35%, 10.5%, 15%, 15%, and 14%, respectively. Centers for Medicare and Medicaid Services Approved State Plans.

30. The California Medicaid Pharmacy Provider Manual, Part 2, "Pharmacy Claim Form (30-1) Completion" instructs pharmacies on how to bill Medi-Cal for prescriptions. In the "Explanation of Form Items" on page 11, the manual specifies that:

> "If the item billed is a drug, check the list found in the *Drugs: Contract Drugs List Part 5 - Authorized Drug Manufacturer Labeler Codes* section of this manual. **The products of manufacturers not listed in this section**

Complaint 9

1     **are not covered by Medi-Cal without prior**
    **authorization.**" (Emphasis added).

2

3 Longs fraudulently misreported the actual manufacturer of its own
4 brand of drugs so that the claim would be paid without having to
5 seek prior authorization.

6     31. Defendant Longs dispenses to Medi-Cal patients its own
7 brand of over-the-counter medications, but indicates on the claim
8 a manufacturer that is not the true manufacturer of the drug.
9 For example, when a Medi-Cal patient brings a prescription for
10 Tylenol® into a Longs store, the pharmacist may dispense any
11 brand of acetaminophen, the active ingredient in Tylenol®, unless
12 the physician specifies "no substitution." Longs' pharmacists
13 have been instructed to provide the patient with Longs' own brand
14 of acetaminophen, which is apparently manufactured by
15 Amerisource/Bergen, but to indicate on the claim form a different
16 manufacturer. By indicating a different manufacturer, Longs is
17 able to choose a manufacturer with a higher AWP. Moreover, it is
18 not clear that Amerisource/Bergen is even an Authorized Drug
19 Manufacturer in California as the only listing for that
20 manufacturer in the state's approved list is as "Family Pharmacy-
21 Amerisource/Bergen." Family Pharmacy is a nationwide network of
22 2,300 community-based drug stores and that name is a servicemark
23 owned by Amerisource Bergen. Thus, Longs may be billing for a
24 drug that is not covered by the program without prior
25 authorization.

26     32. In addition, Longs bills Medi-Cal in excess of its
27 usual and customary charge to the general public. Longs sells to
28 the general public a bottle of 100 capsules of its own brand of

Complaint                              10

500 mg acetaminophen for $2.25. However, it bills Medi-Cal $6.75 for dispensing the same drug by falsely indicating another manufacturer.

C. **Relator Aziz's Attempts to Resolve Billing Problems**

33. Prior to his firing, Relator Aziz had several discussions with upper management, staff of Longs' central billing office, and his supervisors about the fraudulent billing set forth herein. He was never given an explanation for the billing and, instead, was told that he needed to focus on his job and not the billing practices.

1. Falsely Billing Drugs for Patients With Other Coverage

34. In March 2005, Aziz discussed with Bob Lamb ("Lamb"), the pharmacy manager at Aziz's store in Walnut Creek, the problem with Longs' excessive billing to Medi-Cal. He explained to Lamb how Longs was wrongly billing Medi-Cal for patients with other health insurance. Lamb was surprised and took the information to Michael Cantrell ("Cantrell"), an attorney for Longs at the company's general office in Walnut Creek. Lamb later told Aziz that Cantrell also appeared to be surprised by the information. Cantrell stated to Lamb that if Longs had been billing like that for years, instead of only since the beginning of 2005, the company would have "made millions" through that practice.

35. Following Aziz's discussion with Lamb, and Lamb's discussion with Cantrell, no change was made and Defendant continued to falsely and excessively bill the Medi-Cal program. In November or December 2005, Aziz then called the vice-president in charge of overall pharmacy operations at Longs, Frank Scorpiniti ("Scorpiniti"), and explained how the company was

Complaint                                11

1  defrauding the Medi-Cal program through the excessive billings.
2  At that time, Aziz faxed to Scorpiniti billing documents
3  demonstrating the fraud.

4      36.  Shortly thereafter, Scorpiniti came to Aziz's pharmacy.
5  Aziz demonstrated to Scorpiniti the continued problem by having
6  Scorpiniti see the billing information on Aziz's computer screen,
7  which Aziz and Scorpiniti viewed together.  Lamb saw the relator
8  and Scorpiniti view the billing screen together, as did Marcie
9  Adlparvar, another pharmacist in the store.

10     37.  According to the Relator's best recollection, Aziz
11 thereafter spoke to Scorpiniti four times between March 2006 and
12 December 2006 regarding the fraudulent billings to Medi-Cal.  The
13 problem was never corrected and the relator was eventually told
14 to mind his own business and focus on his own job.

15     38.  In early 2007, Aziz spoke to Jimmy Yuen ("Yuen"), a
16 pharmacist at a different Longs' store in Walnut Creek.  Yuen was
17 aware of the billing problem, and they discussed that it had not
18 been corrected by the company.  Yuen was interested in the issue
19 because he was leaving to start his own pharmacy and was
20 concerned about correct billing to Medi-Cal.

21     39.  In June 2007, Abbas Faiq, a Longs' vice-president who
22 worked in information technology, visited Aziz's store late on a
23 Friday evening.  He viewed the false billings on the computer
24 with Aziz.  He did not show much interest in the problem and did
25 not tell Aziz that he would correct it.

26     40.  Relator Aziz's most recent discussion about Longs'
27 continued billing fraud was on March 11, 2008, with his then
28 pharmacy manager, Trinh Joyner ("Joyner").  Joyner subsequently

Complaint                              12

1  sent an email to the district manager, Allison Serodonovich,
2  which again raised the issue of excessive billings to Medi-Cal
3  for patients with other health insurance coverage.  The next day,
4  Joyner spoke to Aziz and said that the general office wanted to
5  know why Aziz kept asking about the billing issues.

6      2.  Falsely Billing Medicaid for Over-the-Counter Drugs

7      41.  Concerning Longs' false and fraudulent identification
8  of manufacturers of over-the-counter medications, Aziz has had
9  numerous conversations with his pharmacy manager, Lamb, beginning
10  in 2000, shortly after Aziz began working at Longs.  Lamb told
11  Aziz that these practices were Longs' general policies.  Aziz
12  spoke to various pharmacists about these issues, and the
13  practices were widely known within the company.  When Aziz called
14  Longs' general office in Walnut Creek about the practices in
15  2005, he was advised to call the billing department's 1-800
16  number.  When Aziz did so, he was told the department would "take
17  a look at it," but nothing changed.

18      42.  In June or July 2005, Aziz spoke to Bich Nguyen
19  ("Nguyen"), Longs' district manager for Contra Costa County (she
20  is currently the district manager for San Jose), about the
21  fraudulent practices involving excessive billing to Medi-Cal.
22  Nguyen told Aziz that he "had a good point."  She said she would
23  pass the information along to the general office and he would
24  hear back from someone about those issues.  However, no one from
25  the general office contacted the relator until after Aziz called
26  and faxed the billing information to Scorpiniti, the vice-
27  president in charge of overall pharmacy operations, in November
28  or December 2005 (see paragraph 35, above).

Complaint                           13

1    43.  As of the date of the relator's termination shortly
2  thereafter, the Defendant's knowingly false and fraudulent
3  billings continued.

4    **D.  Wrongful Termination of Relator Aziz in Violation of
5        the False Claims Acts**

6    44.  Relator incorporates by reference and realleges as
7  though fully set forth herein paragraphs 1 - 43.

8    45.  On March 21, 2008, Relator Aziz was wrongfully
9  discharged from his employment at Longs as a result of his
10 questioning of Longs' billing practices.  The federal False
11 Claims Act protects employees who have been discharged or
12 otherwise discriminated against because of acts done in
13 furtherance of a claim under this section.  Specifically, 31
14 U.S.C. § 3730(h) states:

15         "Any employee who is discharged, demoted,
         suspended, threatened, harassed, or in any other manner
16         discriminated against in the terms and conditions of
         employment by his or her employer because of lawful
17         acts done by the employee on behalf of the employee or
         others in furtherance of an action under this section,
18         including investigation for, initiation of, testimony
         for, or assistance in an action filed or to be filed
19         under this section, shall be entitled to all relief
         necessary to make the employee whole."
20
     46.  Similarly, the California False Claims Act, Cal.
21
   Government Code § 12653(b), prohibits discrimination against an
22
   employee for lawful acts done by the employee in furtherance of a
23
   False Claims Act investigation or action:
24
         "No employer shall discharge, demote, suspend,
25         threaten, harass, deny promotion to, or in any other
         manner discriminate against, an employee in the terms
26         and conditions of employment because of lawful acts
         done by the employee on behalf of the employee or
27         others in disclosing information to a government or law
         enforcement agency or in furthering a false claims
28

Complaint                        14

action, including investigation for, initiation of, testimony for, or assistance in, an action filed or to be filed under Section 12652."

47. Aziz was told he was fired because he violated Longs' policy relating to his acceptance of a $50 merchandise return card given to him by a customer, Michaela Brasesco, and a $30 gift card that he received from his sister. However, in fact, Aziz was fired for consistently complaining about the billing fraud to Longs' management.

48. After Aziz was denied unemployment benefits, he appealed the termination allegedly due to his misconduct in accepting the merchandise return card and gift card. On May 6, 2008, the California Unemployment Insurance Appeals Board ruled that Aziz did not "substantially breach any important duty or obligation owed to the employer, willfully or wantonly, and tending to injure the employer. He was discharged for reasons other than misconduct connected with his most recent work...." Case No. 2378189 Decision.

**E. Violations of California Labor Code § 1102.5(b) and Termination of Employment in Violation of Public Policy**

49. Relator incorporates by reference and realleges as though fully set forth herein paragraphs 1 - 48.

50. Relator Aziz reported Longs' fraudulent practices to the central billing office and his superiors. As a result, Longs retaliated against Aziz by firing him--supposedly for accepting a gift which was found not to be in violation of company policy. In reality, Longs terminated Aziz for refusing to participate in Longs' fraudulent conduct. Longs' retaliation violates California Labor Code § 1102.5(c), which states:

Complaint                              15

1  "An employer may not retaliate against an employee
   for refusing to participate in an activity that would
2  result in a violation of state or federal statute, or a
   violation or noncompliance with a state or federal rule
3  or regulation."

4      51.  Longs' conduct was also in violation of California and
5  federal public policy.  Not only did Longs violate various state
6  and federal laws, its retaliation was intended to punish Aziz for
7  his opposition to Longs' fraudulent and illegal practices.

8      52.  Specifically, and without limitation, the statutes
9  embodying the public policies which Longs violated include the
10 federal False Claims Act, 31 U.S.C. §§ 3729, et seq., as amended,
11 the California False Claims Act, California Government Code §§
12 12650 et seq., the Hawaii False Claims Act, Hawaii Revised
13 Statutes §§ 661 - 21 et seq., and the Nevada False Claims Act,
14 Nevada Revised Statutes §§ 357.010 et seq.

15                          **Count I**

16    **False Claims Act, 31 U.S.C. § 3729(a)(1) and (a)(2)**

17     53.  Relator repeats and realleges each and every allegation
18 contained in paragraphs 1 through 52, above, as though fully set
19 forth herein.

20     54.  This is a claim for treble damages and penalties under
21 the False Claims Act, 31 U.S.C. §§ 3729, et seq., as amended.

22     55.  Through the acts described above, Defendant has
23 knowingly presented or caused to be presented false or fraudulent
24 claims to officers, employees or agents of the United States
25 Government, within the meaning of 31 U.S.C. § 3729(a)(1).

26     56.  Through the acts described above, Defendant has
27 knowingly and intentionally made, used, or caused to be made or
28 used, false or fraudulent records and statements, and omitted

Complaint                        16

material facts, to intentionally get false and fraudulent claims
paid or approved, within the meaning of 31 U.S.C. § 3729(a)(2).

57. The United States, unaware of the falsity of the
records, statements and claims made or caused to be made by the
Defendant, paid and continues to pay claims that would not be
paid but for Defendant's unlawful conduct.

58. As a result of the Defendant's acts, the United States
has been damaged, and continues to be damaged, in a substantial
amount to be determined at trial.

59. Additionally, the United States is entitled to the
maximum penalty of $11,000 for each and every false and
fraudulent claim made and caused to be made by Defendant arising
from their unlawful conduct as described herein.

## Count II

## False Claims Act 31 U.S.C. § 3729(a)(7)

60. Relator repeats and realleges each and every allegation
contained in paragraphs 1 through 52 above, as though fully set
forth herein.

61. This is a claim for penalties and treble damages under
the False Claims Act, 31 U.S.C. §§ 3729, et seq., as amended.

62. Through the acts described above, Defendant has
knowingly made, used, or caused to be made or used, false records
or statements to conceal, avoid, or decrease an obligation to pay
or transmit money or property to the United States Government,
within the meaning of 31 U.S.C. § 3729(a)(7).

63. As a result, monies were lost to the United States
through the non-payment or non-transmittal of money or property
owed to the United States by the Defendant, and other costs were

Complaint                           17

1 | sustained by the United States.

2 | 64. By reason of the Defendant's acts, the United States
3 | has been damaged, and continues to be damaged, in a substantial
4 | amount to be determined at trial.

5 | 65. Additionally, the United States is entitled to the
6 | maximum penalty of $11,000 for each and every false record or
7 | statement knowingly made, used, or caused to be made or used to
8 | conceal, avoid, or decrease an obligation to pay or transmit
9 | money or property to the United States.

10 | **Count III**

11 | **California False Claims Act Government**
12 | **Code §§ 12651(a)(1) and (a)(2)**

13 | 66. Relator repeats and realleges each and every allegation
14 | contained in paragraphs 1 through 52 above as though fully set
15 | forth herein.

16 | 67. This is a claim for treble damages and penalties under
17 | the California False Claims Act, Government Code §§ 12650, <u>et</u>
18 | <u>seq</u>.

19 | 68. Through the acts described above, Defendant has
20 | knowingly presented or caused to be presented false or fraudulent
21 | claims to officers, employees or agents of the State of
22 | California, within the meaning of California Government Code §
23 | 12651(a)(1).

24 | 69. Through the acts described above, Defendant has
25 | knowingly and intentionally made, used, or caused to be made or
26 | used, false or fraudulent records and statements, and omitted
27 | material facts, to intentionally get false and fraudulent claims
28 | paid or approved, within the meaning of California Government

Complaint                           18

1 | Code § 12651(a)(2).

2 | 70. The State of California, unaware of the falsity of the
3 | records, statements and claims made or caused to be made by the
4 | Defendant, paid and continues to pay claims that would not be
5 | paid but for Defendant's unlawful conduct.

6 | 71. As a result of the Defendant's acts, the State of
7 | California has been damaged, and continues to be damaged, in a
8 | substantial amount to be determined at trial.

9 | 72. Additionally, the State of California is entitled to
10 | the maximum penalty of $10,000 for each and every false and
11 | fraudulent claim made and caused to be made by Defendant, arising
12 | from its unlawful conduct as described herein.

13 | **Count IV**

14 | **California False Claims Act Government**
15 | **Code § 12651(a)(7)**

16 | 73. Relator repeats and realleges each and every allegation
17 | contained in paragraphs 1 through 52 above as though fully set
18 | forth herein.

19 | 74. This is a claim for penalties and treble damages under
20 | the California False Claims Act, Government Code §§ 12650, et
21 | seq.

22 | 75. Through the acts described above, Defendant has
23 | knowingly made, used, or caused to be made or used, false records
24 | or statements to conceal, avoid, or decrease an obligation to pay
25 | or transmit money or property to the State of California, within
26 | the meaning of California Government Code § 12651 (a)(7).

27 | 76. As a result, monies were lost by the State of
28 | California through the non-payment or non-transmittal of money or

Complaint                                    19

property owed to California by the Defendant, and additional other losses were sustained by the acts of Defendant.

77. By reason of the Defendant's acts, the State of California has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

78. Additionally, the State of California is entitled to the maximum penalty of $10,000 for each and every false record or statement knowingly made, used, or caused to be made or used to conceal, avoid, or decrease an obligation to pay or transmit money or property to the state.

## Count V

### California False Claims Act Government Code § 12651(a)(8)

79. Relator repeats and realleges each and every allegation contained in paragraphs 1 through 52 above as though fully set forth herein.

80. This is a claim for penalties and treble damages under the California False Claims Act, Government Code §§ 12650, et seq.

81. Through the acts described above, even if Defendant did not knowingly or intentionally submit false claims, Defendant was a beneficiary of an inadvertent submission of a false claim to the state of California, subsequently discovered the falsity of the claim, and failed to disclose the false claim to the State of California within a reasonable time after its discovery.

82. As a result, monies were lost by the State of California through Defendant's conduct in failing to disclose the false claims submitted by Defendant, and the State of California

Complaint                                        20

sustained additional other losses through the acts of Defendant.

83. By reason of the Defendant's acts, the State of California has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

84. Additionally, the State of California is entitled to the maximum penalty of $10,000 for each and every false claim that the State discovered and failed to disclose.

## Count VI

### Hawaii False Claims Act
### Hawaii Revised Statutes § 661-21(a)(1), (a)(2)

85. Relator repeats and realleges each and every allegation contained in paragraphs 1 through 52 above as though fully set forth herein.

86. This is a claim for treble damages and penalties under the Hawaii False Claims Act, Hawaii Revised Statutes §§ 661-21, et seq.

87. Through the acts described above, Defendant has knowingly presented or caused to be presented false or fraudulent claims to officers, employees or agents of the State of Hawaii, within the meaning of Hawaii Revised Statutes § 661-21(a)(1).

88. Through the acts described above, Defendant has knowingly made, used, or caused to be made or used, false or fraudulent records or statements to get false and fraudulent claims paid or approved, within the meaning of Hawaii Revised Statutes § 661-21(a)(2).

89. The State of Hawaii, unaware of the falsity of the records, statements and claims made or caused to be made by the Defendant, paid and continues to pay claims that would not be

Complaint                                       21

1 | paid but for Defendant's unlawful conduct.

2 | 90. As a result of the Defendant's acts, the State of
3 | Hawaii has been damaged, and continues to be damaged, in a
4 | substantial amount to be determined at trial.

5 | 91. Additionally, the State of Hawaii is entitled to the
6 | maximum penalty of $10,000 for each and every false and
7 | fraudulent claim made and caused to be made by Defendant, arising
8 | from its unlawful conduct as described herein.

9 | **Count VI**

10 | **Hawaii False Claims Act**
11 | **Hawaii Revised Statutes § 661-21(a)(7)**

12 | 92. Relator repeats and realleges each and every allegation
13 | contained in paragraphs 1 through 52 above as though fully set
14 | forth herein.

15 | 93. This is a claim for penalties and treble damages under
16 | the Hawaii False Claims Act, Hawaii Revised Statutes §§ 661-21,
17 | et seq.

18 | 94. Through the acts described above, Defendant has
19 | knowingly made, used, or caused to be made or used, false records
20 | or statements to conceal, avoid, or decrease an obligation to pay
21 | or transmit money or property to the State of Hawaii, within the
22 | meaning of Hawaii Revised Statutes § 661-21(a)(7).

23 | 95. As a result, monies were lost by the State of Hawaii
24 | through the non-payment or non-transmittal of money or property
25 | owed to Hawaii by the Defendant, and additional other costs were
26 | sustained by the acts of Defendant.

27 | 96. By reason of the Defendant's acts, the State of Hawaii
28 | has been damaged, and continues to be damaged, in a substantial

Complaint                          22

1 amount to be determined at trial.

2    97.   Additionally, the State of Hawaii is entitled to the
3 maximum penalty of $10,000 for each and every false record or
4 statement knowingly made, used, or caused to be made or used to
5 conceal, avoid, or decrease an obligation to pay or transmit
6 money or property to the state.

7                            **Count VII**

8                    **Nevada False Claims Act**
9         **Nevada Revised Statutes § 357.040-1(a), 1(b)**

10    98.   Relator repeats and realleges each and every allegation
11 contained in paragraphs 1 through 52 above as though fully set
12 forth herein.

13    99.   This is a claim for treble damages and penalties under
14 the Nevada False Claims Act, Nevada Revised Statutes §§ 357.010,
15 et seq.

16    100.   Through the acts described above, Defendant has
17 knowingly presented or caused to be presented false or fraudulent
18 claims to officers, employees or agents of the State of Nevada,
19 within the meaning of Nevada Revised Statutes § 357.040-1(a).

20    101.   Through the acts described above, Defendant has
21 knowingly made, used, or caused to be made or used, false or
22 fraudulent records or statements to obtain payment or approval of
23 a false claim, within the meaning of Nevada Revised Statutes §
24 357.040-1(b).

25    102.   The State of Nevada, unaware of the falsity of the
26 records, statements and claims made or caused to be made by the
27 Defendant, paid and continues to pay claims that would not be
28 paid but for Defendant's unlawful conduct.

Complaint                            23

1    103. As a result of the Defendant's acts, the State of
2 Nevada has been damaged, and continues to be damaged, in a
3 substantial amount to be determined at trial.

4    104. Additionally, the State of Nevada is entitled to the
5 maximum penalty of $10,000 for each and every false and
6 fraudulent claim made and caused to be made by Defendant, arising
7 from its unlawful conduct as described herein.

8                          **Count VIII**

9                  **Nevada False Claims Act**
10         **Nevada Revised Statutes § 357.040-1(g)**

11   105. Relator repeats and realleges each and every
12 allegation contained in paragraphs 1 through 52 above as though
13 fully set forth herein.

14   106. This is a claim for treble damages and penalties under
15 the Nevada False Claims Act, Nevada Revised Statutes §§ 357.010,
16 et seq.

17   107. Through the acts described above, Defendant has
18 knowingly made, used, or caused to be made or used, a false
19 record or statement to conceal, avoid, or decrease an obligation
20 to pay or transmit money or property to the State of Nevada,
21 within the meaning of Nevada Revised Statutes § 357.040-1(g).

22   108. The State of Nevada, unaware of the falsity of the
23 records, statements and claims made or caused to be made by the
24 Defendant, paid and continues to pay claims that would not be
25 paid but for Defendant's unlawful conduct.

26   109. As a result of the Defendant's acts, the State of
27 Nevada has been damaged, and continues to be damaged, in a
28 substantial amount to be determined at trial.
Complaint                     24

1    110.   Additionally, the State of Nevada is entitled to the
2    maximum penalty of $10,000 for each and every false and
3    fraudulent claim made and caused to be made by Defendant, arising
4    from its unlawful conduct as described herein.

**Count IX**

**False Claims Act 31 U.S.C. § 3730(h)**

7    111.   Relator repeats and realleges each and every
8    allegation contained in paragraphs 1 through 52 above as though
9    fully set forth herein.

10   112.   Through reporting, investigating, and attempting to
11   stop the fraudulent conduct of Defendant, the Relator was
12   threatened, discharged and discriminated against in the terms and
13   conditions of his employment by Longs because of lawful acts done
14   by the Relator in furtherance of an action under section 31
15   U.S.C. § 3729.

16   113.   Relator is entitled to all relief necessary to make
17   him whole, including reinstatement with the same seniority to the
18   position he had before the unlawful termination, 2 times the
19   amount of back pay lost, interest on the back pay, and
20   compensation for any special damages sustained as a result of the
21   discrimination.

**Count X**

**California False Claims Act Government Code § 12653(b)**

25   114.   Relator repeats and realleges each and every
26   allegation contained in paragraphs 1 through 52 above as though
27   fully set forth herein.

28   //

1     115.   Through reporting, investigating, and attempting to
2 stop the fraudulent conduct of Defendant, the Relator was
3 threatened, discharged and discriminated against in the terms and
4 conditions of his employment by Longs because of lawful acts done
5 by the Relator in furtherance of an action under section 12652.

6     116.   Relator is entitled to all relief necessary to make
7 him whole, including reinstatement with the same seniority to the
8 position he had before the unlawful termination, 2 times the
9 amount of back pay lost, interest on the back pay, and
10 compensation for any special damages sustained as a result of the
11 discrimination, and where appropriate, punitive damages.

## Count XI

### Wrongful Termination in Violation of Public Policy and California Labor Code § 1102.5

15     117.   Relator repeats and realleges each and every
16 allegation contained in paragraphs 1 through 52 above as though
17 fully set forth herein.

18     118.   In doing the things herein alleged, Defendant
19 threatened, harassed and discriminated against Relator in the
20 terms and conditions of his employment and ultimately terminated
21 that employment.

22     119.   This conduct was in violation of public policies
23 pursuant to various state and federal laws, and to punish Relator
24 Aziz for his opposition to participating in Longs' fraudulent and
25 illegal practices.

26     120.   In doing the things herein alleged, Defendant violated
27 Labor Code § 1102.5 by retaliating against Aziz, including
28 ultimately terminating his employment.

Complaint                     26

1    121.  As a direct and proximate cause of Longs' wrongful
2  conduct, plaintiff has sustained and will sustain the loss of
3  salary, as well as interest thereon.  Aziz has also suffered
4  damages, including, but not limited to, lost health insurance
5  premiums, store discounts, and other valuable employee benefits.
6  Additionally, the actions of Defendant Longs were carried out in
7  a deliberate manner in conscious disregard of the rights of Aziz
8  and were malicious, despicable and were intended to harm him.
9  Relator is therefore entitled to punitive damages against Longs
10 in an amount sufficient to punish Defendant, and to deter future
11 similar misconduct.

12                              **Prayer**

13     WHEREFORE, Relator prays for judgment against the Defendant
14 as follows:

15     1.  That Defendant cease and desist from violating the False
16 Claims Act, 31 U.S.C. §§ 3729 et seq., the California False
17 Claims Act, California Government Code §§ 12651 et seq., the
18 Hawaii False Claims Act, Hawaii Revised Statutes §§ 661-21 et
19 seq., and the Nevada False Claims Act, Nevada Revised Statutes §§
20 357.010 et seq.;

21     2.  That this Court enter judgment against Defendant in an
22 amount equal to three times the amount of damages the United
23 States and the States of California, Hawaii, and Nevada have
24 sustained because of Defendant's actions, plus a civil penalty of
25 $11,000 for each violation of 31 U.S.C. § 3729 and $10,000 for
26 each violation of California Government Code § 12651, Hawaii
27 Revised Statutes § 661-21(a), and Nevada Revised Statutes §
28 357.040-1;

Complaint                        27

1     3.   That Relator be awarded the maximum amount allowed
2  pursuant to 31 U.S.C. § 3730(d), California Government Code §
3  12652(g); Hawaii Revised Statutes § 661-27(a), and Nevada Revised
4  Statutes § 357.210;

5     4.   That, as a result of Longs' unlawful employment actions,
6  Relator receive all relief necessary to make him whole pursuant
7  to 31 U.S.C. § 3730(h) and California Government Code § 12653(b);

8     5.   That, as a result of Longs' unlawful employment actions,
9  plaintiff receive all relief necessary to make him whole pursuant
10 to federal and state causes of action for wrongful employment
11 conduct, retaliation, and termination;

12    6.   That, as a result of Longs' violation of public policy
13 and violation of California Labor Code § 1120.5, plaintiff
14 receive all relief necessary to make him whole pursuant to
15 federal and state law, including punitive damages;

16    7.   That Relator be awarded all costs of this action,
17 including attorneys' fees, costs, and expenses; and

18    8.   That Relator recover such other and further relief as
19 the Court deems just and proper.

20 //
21 //
22 //
23 //
24 //
25 //
26 //
27 //
28 //

Complaint                           28

1

**Demand for Jury Trial**

2    Pursuant to Rule 38 of the Federal Rules of Civil Procedure,

3  Relator hereby demands a trial by jury.

4

5  Dated: 3/25/09              By: _Michael G. Hirst_

6                             Michael A. Hirst, Esq.
                             Leslie S. Guillon, Esq.
7                             HIRST & CHANLER LLP
                             455 Capitol Mall, Suite 605
8                             Sacramento, CA 95814
                             Phone: (916) 443-6100
9                             Fax:   (916) 443-6700

10
11  Dated: 3/25/09             By: _Michael G. Hirst for_

                             Mark A. Kleiman, Esq.
12                            LAW OFFICES OF MARK ALLEN KLEIMAN
                             2907 Stanford Avenue
13                            Venice, CA 90292
                             Phone: (310) 306-8094
14                            Fax:   (310) 260-2535
                             Attorneys for Relator
15                            Haroon Aziz

16

17

18

19

20

21

22

23

24

25

26

27

28

Complaint                         29

Exhibit A

i741507　　KAREN M

FENTANYL PATCH TD/72 1.00MCG/HR
#1.0　　(SANDOZ)

RETAIL PRICE:　489.90

---

Version 5.1
(MCA-MCA)　　(SECONDARY)
Help Desk Phone:

Total Paid　　Claim Accepted　　Dispensing Fee　　Authorization #
$　154.98　　　Copay　　　　　　$　0.00
　　　　　　　　$　0.00

Approval Msgs:

Message 1:　18D2359

Message 2:　KAREN

8 #0042 p01　　　ENTER SELECTION(NEXT) -

************ ************ ************ ************ ************ ************ ************ ************ ************ ***

ADJUDICATION RESPONSE

#741507

FENTANYL PATCH TD72 100MCG/HR
#10               (SANDOZ)

DR. [redacted]

KAREN M

RETAIL PRICE:    539.14
------------------------------------------------------------------

Version 5.1                   Total Paid         --Claim Accepted--          Authorization #
(HNT-001)                   $   295.61       Copay          Dispensing Fee    072475026521022999
                                           $   15.00       $   2.35

------------------------------------------------------------------

Conflict . . . . .  . DD DRUG - DRUG INTERACTION          (1)                DD DRUG - DRUG INTERACTION          (2)
Severity . . . . .  . MAJOR                                                  MAJOR
Other Pharmacy . .  . YOUR PHARMACY                                          YOUR PHARMACY
Prev. Date of Fill  . 08/30/2007                                            07/30/2007
Qty of Prev. Fill.  . 120.000                                               120.000
Database ID. . . .  . MEDI-SPAN                                              MEDI-SPAN
Prescriber ID. . .  . SAME                                                   SAME
Text . . . . . . .  . LEKIVA    TAB 700MG                                    LEKIVB 700MG

                                                                                            (3)

DUR Overflow:
Messages:

S #0042 p01          ENTER SELECTION(NEXT) -

********** ********** ********** ********** ********** ********** ********** ********** ********** ********** ****